May it please the court, my name is William Kent and I'm here on behalf of Francheska Brizan who is here in the courtroom, your honors. I also want to thank the court for accommodating the conflict in my schedule on resetting this. Ms. Brizan is here on appeal today of a denial by the district court of her motion to withdraw her guilty plea made pursuant to a plea agreement to a charge to an information charging misprision of a felony in violation of 18 U.S.C. Section 4. Ms. Brizan was required under Rule 11 to show fair and just reason for the withdrawal of her plea. She alleged at least four grounds for the fair and just reason and that was first that she was actually innocent and I'd like to just step aside for just a moment and say that's why we're here today. Ms. Brizan has struggled for years now to try to simply after the plea which she felt coerced into entering and to having her day at court she's felt she's actually innocent, she's persisted in this effort and that's all she's asking for is an opportunity to have her day in court and to establish her actual innocence. What's your response to the appeal waiver? How do you get around the waiver of your right to appeal? Well Judge Adelman asked the appeal waiver, I know the government cited Raman, United States Circuit of Appeals, and Raman recognized that the Ninth Circuit does make an exception for general appeal waivers such as this when there is a claim of ineffective assistance of counsel and I tried to lard my motion withdrawal plea with around ineffective assistance of counsel claims. Isn't that something that should be taken up collaterally? I mean normally you don't deal with ineffective assistance claims on direct appeal do we? Yes sir, that's correct. Absolutely ordinarily not. U.S. Supreme Court I think in the Mazaro case said that the defendant is not required to raise ineffective assistance claims in direct appeal to preserve them but here I think the record is adequate and I would point the court to the supplemental record which the government filed and I believe it's it. So if we're not supposed to take up ineffective assistance on direct appeal then why do you even mention it? Why is that even relevant? I mean how do you get around the appeal waiver? Well because ineffective assistance claims can be adjudicated on direct appeal if the record is adequate and here's where in supplemental record page 23 the government in the lower court took the position that the government would accept the defendant's proffer of facts and said that the government could still prevail on its legal arguments even with the court accepting the defendant's proffer of facts and the defendant proffered that she was not advised of the appeal waiver by her attorney. Yeah, but the colloquy took care of that, didn't it? I mean there was a thorough colloquy with the court in which that was thoroughly gone over, was it or not? Yes, that's where I think I have the advantage because I think the colloquy in fact shows it's very unusual and it's one of these cases unusual enough to justify the court making a finding that there was an annoying waiver of the right of appeal because the judge, Judge Ishii, asked the counsel, Mr. Shemaria, the defense counsel, was there a waiver in the pre-agreement and the answer was no, there was not a waiver in the pre-agreement. Yeah, but that was then cleared up and the judge went over that and the defendant acknowledged explicitly that she was aware of that. How do you get around that? Judge, I don't see that it was cleared up because in fact the way I would read the record is, with all respect, this pre-agreement was signed that very morning. So the lawyer who's saying there's not a waiver in the pre-agreement has just gone through the document and signed it. But the judge said there was. Well, the lawyer said there was and he had to be corrected. So if the lawyer had to be corrected, Judge Adelman, then surely the defendant didn't know if her own lawyer didn't know. I think that's, and this gets, then the government conceded, Judge, in supplemental record page 23, that the government would accept the defendant's statement of facts. And the proffer of facts included a proffer that she was not advised and did not understand. So I think on this record the court can proceed. So now your argument is based on ineffective assistance. It's not based on this prison. You sort of switched ground then? No, sir. They're interlocking arguments because the claims that are made is that the attorney did not explain any of this to Ms. Brisson. The failure to explain is the ineffectiveness. So there's no way to do the one without the other. They're necessarily interconnected. It's sort of like 404B. It's so tied together you can't separate it. So if we undo this, your client goes back to trial on the original charge. The government would have that option, yes, ma'am. May I say, Judge Graber, Judge Ishii I think put his finger on what is the best argument, one not made by the government below, but Judge Ishii put his finger on the best response to this, if we could get to the merits. And the best response is, well, wait a minute. This is a plea agreement. And he cited this case he found, which I had not seen, called Caraballo-Rodriguez, U.S. v. Caraballo-Rodriguez, the First Circuit case from 2007, in which the First Circuit used this term shoehorning, that when we all know in plea agreement and plea negotiations sometimes the parties shoehorn a deal together, they come up with a lesser charge. And it's understood there may be defects or problems with that lesser charge, but they're being as part of the plea agreement. The defendant wants the lesser charge. And so the defendant is willing to waive these defenses or defects that technically exist to the lesser charges in order to get the plea agreement. And that's fine. The shoehorn argument, if the facts were that the defense attorney had explained all of this to the client, so the client understood she was being shoehorned, then I would agree with Caraballo-Rodriguez, case closed. She stuck with the bargain she made. But she didn't make the bargain, Judge Adelman or Judge Graber, Judge Tashima. She did not understand. She was resisting this with every ounce of her effort to not plead anything. Well, I understand that. It does strike me, though, that the original charge subjected your client to a very, very considerable period in prison, and that this was an extremely favorable plea deal. And I suppose that to some extent the district court can take that into account in assessing, even if we were to look at the merits, in assessing the merits of this case. Well, Judge, I think in terms of, say, assessing coercion or elements such as that, but in assessing the did the defendant understand she was pleading guilty to something she had an absolute constitutional protection against pleading guilty to, there's nothing in the record that suggests that she knew that. Well, there's a constitutional right not to plead guilty to anything if you don't want to. And if she had actually participated in the conspiracy, then she would have had the right at trial to assert a Fifth Amendment right. But all of that, it seems to me, goes out of the picture once she reaches this deal. Well, yes, Judge, that is the things that she has agreed to go out, that she's waiving what she's knowingly waiving. And that's why I say, again, the government didn't contest in the supplemental record, page 23, they're willing to accept our proffer of what the facts would be that she was not advised about the defect in the information was subject to dismissal in Rule 12. Well, what's the defect in the information? This is a plea deal. As you just said, the government is free and the defendant are free to voluntarily work out a deal. She wasn't charged with misprison. That was something that was worked out pursuant to the plea agreement. So I don't understand, what is the defect? Well, the defect, Judge, is still the information for the court. The federal court only has jurisdiction in a criminal case if there's a proper charging document, either an indictment from a grand jury or properly filed information. The information here was defective on its face. It omitted an essential element of the offense. That it tracked the statutory language would ordinarily be sufficient, but not here. So now that's another argument. That's a different argument now, that now you're away from ineffective assistance and you're on to something wrong with the information. Can you keep going from one space to another? I'm not quite sure which is the main argument. But, Judge, these were all, as I said, she made four arguments below, which were the basis for the fear and just reason to allow the withdrawal of the plea. She made four arguments. It isn't that we're going from one to the other, but these, we can't choose to simply overlook the error, or I can't as her attorney, if I see an error of fundamental defect in the information. Now, it would be one thing under the shoehorn argument if she had been told, well, this information doesn't have an essential element. And what if she had further been told, and by the way, they can't establish that essential element because there is no affirmative act. Because, by the way, the affirmative act they're saying is an affirmative act doesn't meet the definition under the case law. Are the affirmative act of telling her husband to switch phones you're saying is insufficient? Yes, ma'am. The Neal case is dispositive there. The Neal case. First, there's no case. I found none and the government cited none, nor did Judge Ishii. No case that holds a verbal act alone to be sufficient. Well, I couldn't find one that said the opposite. Well, no case that says it is. And the Neal case. And no case that says that it isn't. Well, that's why I say the Neal case is dispositive, because the Neal case says, where in Neal it was an instruction to a bookkeeper to alter records. Even though the bookkeeper altered records, as instructed, the bookkeeper, though, kept the original records. And the, I believe it's the Eighth Circuit, said that's not good enough. But the intent to have something concealed isn't sufficient to be the affirmative act. And I infer from that the act has to be an act and not the verbal act of telling the bookkeeper to change the record. But the bookkeeper had to, in fact, have changed the record and destroyed the true record. That's what the Eighth Circuit said in Neal. I think that case is dispositive. If this plea deal is unwound, then you agree the government is free to charge the defense with conspiracy, right? I'm afraid they would be, Judge, yes. And so she would be exposed to something awful. I mean, a much greater liability. She understands. Judge, may I say, and I put this in the record below. When I was approached by Ms. Brisson to represent her, I advised her not to do this. I counseled with her for months to not retain me and not go further to seek to withdraw this plea. And she did. But because she is actually innocent, she persists in that assertion, Judge. This is her choice. Thank you, counsel. Thank you, Judge. I now hear from the government. Good afternoon, Your Honors. I'm Karen Escobar, and I handled the case in the district court. The government's position is that the defendant did waive her right to appeal any aspect of the case, including the denial of the motion to withdraw her guilty plea. The defendant pled guilty to the crime of misprison. She advised the probation officer in the post-plea interview and in the pre-sentence report at page 8 that she was guilty of the facts as set forth in the plea agreement and that she verbally accepted responsibility for her actions. But do you agree that she raised this, in this case, in effective assistance? She raised it at various points in the district court and also in the opposition  case. She did not directly address effective assistance of counsel in her brief. Instead, the brief argues she couches the ineffective assistance of counsel claim in these Fifth Amendment arguments, the deficient, the alleged deficiency of the superseding information, the charging document, the alleged deficiency of the factual basis. So you maintain your position that that factual scenario is inefficient to get her on the waiver? I think the Court can consider it. It's not squarely addressed, however, in the brief, but I think the Court can consider the ineffective assistance of counsel claim. Well, to consider it, though, we'd have to say, you know, the waiver doesn't apply, right? The waiver does apply. The Court can consider whether there was ineffective assistance of counsel at the time of the negotiation of the plea would be the test for the Court. There is no evidence of that. What do you think? We can consider the ineffective assistance claim in order to decide whether or not the waiver is effective? I think in terms of considering whether there is an exception to the waiver, the Court can consider whether there was effective assistance of counsel. Now, what the defense is citing to for effective or ineffective assistance of counsel is this dialogue during the plea hearing that the defense attorney was unaware of an appellate waiver in the plea agreement that was signed that day. All right. That was clarified. We agree with Your Honor. And the record bears this out, that it was just a mistake. Judge Ishii, who reviewed the plea agreement at the time of the plea hearing, said there is no plea waiver, and the defense attorney agreed. And the government corrected the Court and defense counsel, and the Court agreed, oh, yes, it's here, it's at this page. And then the declaration that was submitted by the former attorney, Mr. Shimaria, in the context of the denial, in the context of the motion, defendant's motion to withdraw her plea, Mr. Shimaria indicated he went over the plea agreement with the defendant for several months, from June to October of 2009. He said he spent many hours reviewing the plea agreement, and this is the language he used in the declaration, explaining every single paragraph and ensuring she understood her plea agreement and the entire process. His declaration is contained in the supplemental excerpts of record at 112. So the record indicates that the defendant was advised of her appellate right. The district court advised her of it at the plea hearing. The defendant indicated she understood her appeal rights. The defendant indicated that she wished to waive her appeal rights in return for a plea to Ms. Prison, which, of course, did expose her to a significantly less time. The statutory maximum for the offense was 3 years. The crimes to which she was – that she was charged with originally, the drug charges, exposed her to 10 years' mandatory minimum, maximum of life. The guidelines, based on the drug quantity in this case, were significant. Had she proceeded to trial, she would have faced a minimum of 19 years under the guidelines, the low end of the guideline range. So, yes, she was receiving a significant benefit as a result of the plea bargaining process. Well, apparently – apparently, according to Mr. Kent, she knows what she's doing. She knows she faces, even if she wins here, you know, these substantial liabilities, maybe even greater exposure than she had before. But getting to the merits, let me ask you this question. Suppose, hypothetically, the panel does reach the question, is there a fair and just reason to withdraw the plea? You agree, first of all, that if the information is insufficient to allege an offense that that's a fair and just reason? If it is true? If it is true. Now, you agree in this case it is true, as Mr. Kent says? No. Information is defective on its face? It is not defective on its face, Your Honor. It does track the statutory language. It does allege not only the failure to report, but the fact that there must be concealment. And that's all that is required. We do not believe that the information was defective in any way. The – and I'd just like to point out that with respect to the Affirmative Act, the defense has brought that up and maintains that there was no Affirmative Act, relies upon the Neal case, which – Do you have a citation for that? Well, it's a 1939 case. It's an Eighth Circuit case. It's cited in both the defense brief and the government brief. All right. That's fine. Okay. It's a 1939 case. It's not cited in any case for the proposition that the defense is citing it for. That is, that the intent must be carried out, the intent to conceal, except in the Brantley case, which was reversed after the defense submitted her brief. The Brantley case, and the government refers to the Brantley case as Brantley 2, reversed the district court finding that the indictment violated the Fifth Amendment. It remanded, however, on the Affirmative Act evidence. It found that there was insufficient evidence at trial that the defendant concealed the felony in the case. What's the Affirmative Act here? The Affirmative Act is the defendant's exhortation of her husband to dump his phone in the context of a drug transaction when he's going to Los Angeles to obtain 4 kilograms of cocaine from a new source of supply after Sergio Padilla, his original source of supply, was arrested with the 38 kilos of cocaine. There was a seizure of $1.4 million. That, we believe, is the best evidence of Affirmative Act. There's other evidence that could be construed as an Affirmative Act of concealment. That would be the fact that the defendant advised her husband during the wiretap of his phone that she intended to find out what happened to Sergio Padilla by going to the authorities to find out what who was incarcerated and whatnot. That, such Affirmative Act evidence was upheld in a case. It was cited in the government's brief. It's an unpublished case. It's the Wilkes case cited at government brief page 45. The act of shielding co-conspirators from contacts with authorities. The Neal case, though, does not apply because not only is it old and is cited in Brantley 1 that was reversed, but it's factually distinguishable because in that case, the books that the defendant asked his bookkeeper to alter were returned in its original state to him. The bookkeeper copied the books and altered those copies and told the defendant to burn the original copies, which he did not. And here, the defendant's urging her husband to get rid of the phone. The husband has the phone. The defendant doesn't have the phone, doesn't have control of the phone, in contrast to Neal, who had control of the books. So the argument regarding intent to carry out the concealment just does not apply. She no longer had control of the phone. In any event, the government believes that it is fair and just that the plea not be set aside. The law supports waiver. The court should enforce the waiver of the defendant's appeal rights. She waived those rights in an annoying and intelligent plea. There was no ineffective assistance of counsel. And the delay between the time that she filed the motion to withdraw her plea and the entry of her guilty plea was 15 months. She was sentenced two years later. The delay was very long and supports not overturning the plea. And the government cited the case law with respect to that as well. I'm running out of time. You have run out of time. Does anyone have any more questions for counsel? If not, Mr. Kent, we used a lot of your time with questions, and you may have a minute for rebuttal if you want it. Thank you, Your Honors. Thank you. Thank you, Your Honors. The Brantley case, I may remember it wrong, but I think Brantley did not go to trial. The Eleventh Circuit reversed the district court on Brantley, which had dismissed an indictment, not because it disagreed with Neal in any way or this proposition that it's not an affirmative act, rather that it was not proper procedurally to dismiss an indictment on a fact question. This was not challenging an information or indictment because it missed an essential element, but the defense was arguing the facts were this. The government says the facts are that. The district judge dismissed the indictment pretrial. The Eleventh Circuit said you can't dismiss an indictment pretrial on a factual dispute. There's no mechanism to do that in the Federal Rules of Criminal Procedure. So that was Brantley. On the delay, Judge Ishii himself noted that he didn't attribute the delay to Ms. Brizon, but rather to her lawyers. Mr. Hammerschmidt first took responsibility for the delay in his filing the original motion to withdraw the plea, and Judge Ishii noted that in the email attachments to the original motion to withdraw the plea, which were all the emails from months between Ms. Brizon and Mr. Shamaria, that she had immediately told Mr. Shamaria either the day or the very next morning she wanted the plea withdrawn. And the delay was attributed to the lawyers. Thank you, Judge. Let me ask one question again. This may be repetitive, but in light of the government's argument, tell me again why you believe this information, although it's alleged in the statutory language, is deficient on its face. Well, Judge, it does not. It only exactly tracks the statutory language. It does not include the requirement which the case law is added by gloss in order to be constitutionally to prevent the constitutional infirmity. There must be an additional element of an affirmative act. The affirmative act language, which is an essential element in the Ninth Circuit, is not included in the information. The omission of an essential element of an offense in an indictment or an information renders the indictment or information fundamentally defective. All right. Thank you. Yes, sir. Well, let me just ask. Weren't all the facts in the plea agreement? I'm sorry? Well, Judge, that, of course, segues into our argument that the facts in the plea agreement do not constitute a sufficient factual basis, so that doesn't cure the defect. Thanks, sir. We just meant that leads to another question. Why don't the facts in the plea agreement constitute a sufficient factual basis? Well, because now we're ‑‑ depending on your point of view about those facts, of course, it's a he said, she said here, but we say that those facts are only a verbal act, that they're a verbal act, they were not carried out, therefore, there was no act as required under the Ninth. Wait a minute. Who do you classify as a verbal act? What she told her husband? Yes, sir. That's the only act. And that, Judge E.C. ‑‑ I mean, Justice Hema, in the plea agreement, that is expressly carved out as the affirmative act, so we don't have to guess what the affirmative act was. Okay. Thanks. Thank you. Thank you. The case just argued is submitted. We appreciate very much the arguments of both counsel. It's been very helpful, and we will stand adjourned. Okay.
judges: Adelman, Tashima, Graber